Cletus BROWN, Plaintiff-Respondent,

v.

**MISSOURI PACIFIC RAILROAD COMPANY, Defendant-Appellant.**

No. 68347.

Supreme Court of Missouri,
En Banc.

Nov. 18, 1986.

As Modified on Denial of Rehearing
Dec. 16, 1986.

William G. Guerri, Albert E. Schoenbeck, St. Louis, I. Michael Greenberger, Washington, D.C., for defendant-appellant.

Don B. Sommers, Prudence W. Kramer, St. Louis, for plaintiff-respondent.

BLACKMAR, Judge.

The plaintiff, a long-time employee of the defendant railroad, was injured in a fall. He sued and recovered damages under the Federal Employers' Liability Act. He then filed suit in the Circuit Court of the City of St. Louis charging that the defendant, through its supervisory employees and claims agents, had undertaken systematic retaliatory harassment by threatening him with discharge if he filed suit and then holding him out of service pending an unneeded physical examination after he recovered judgment. The action was characterized as one in "prima facie tort." The plaintiff recovered a large judgment for actual and punitive damages. The Court of Appeals, Eastern District, transferred the case here without express resolution, because of uncertainty as to whether the plaintiff's claim was preempted by the Railway Labor Act. We take the case on original appeal and reverse outright, concluding (1) that the action is preempted by the Railway Labor Act and is within the exclusive jurisdiction of the appropriate division of the National Railroad Adjustment Board, established by that act, and, (2) that the plaintiff has failed to plead and prove a cognizable claim in prima facie tort under Missouri law.

*1. The Plaintiff's Theory*

The plaintiff characterizes his action as one in prima facie tort. The evidence showed that, after the plaintiff was injured, he was repeatedly told by a claim agent that he would never work another day for the railroad if he retained a lawyer and filed suit to recover for his injury. A supervisor told other employees that the

plaintiff would be fired if he sued. The plaintiff nevertheless retained a lawyer, and the claim agent told the lawyer over the telephone that the plaintiff would be discharged if he did not settle with him. The most that was offered him was $3000 plus lost wages. His suit proceeded to trial and he recovered a judgment of $175,000, which was quickly paid. Following the trial, the plaintiff was held out of service without explanation and was treated as though he was going to be fired. He had difficulty in obtaining an explanation, but was belatedly told that the railroad wanted a further physical examination because of his trial testimony, in which he had said that he sometimes dropped tools because of the injury to his wrists. The plaintiff got in touch with his union representative and filed a grievance for lost wages for the period during which he was held out of service. The railroad finally scheduled an examination by an orthopedic surgeon of its choice, who cleared the plaintiff for return to work. The plaintiff was allowed to return and all lost wages were restored him. The grievance before the National Railroad Adjustment Board was abandoned. The plaintiff made no attempt at trial to prove any tangible damages, by his own testimony or otherwise.

The plaintiff's verdict director read as follows:

### INSTRUCTION NO. 5

Your verdict must be for plaintiff, if you believe:

First, employees of defendant acting within the scope and course of their employment by defendant threatened to discharge plaintiff if he sued defendant for injuries and withheld him from his employment after the trial of his lawsuit, and;

Second, defendant's employees intended to cause injury to plaintiff, and;

Third, plaintiff was injured, and;

Fourth, there was no justification or an insufficient justification for the acts of defendant's employees.

Acts were within the 'scope and course of employment' as that phrase is used in this instruction even though not specifically authorized by Missouri Pacific Railroad if:

1. they were done by the employees to further the interests of Missouri Pacific Railroad under the general authority and direction of Missouri Pacific Railroad, and

2. they naturally arose from the performance of the employees' work.

The jury returned a verdict for $75,000 actual damages and $7,500,000 punitive damages. The trial judge overruled post-trial motions, accompanying his order with an opinion explaining the basis for his rulings for the guidance of appellate courts. The defendant appealed, raising numerous points. We find it necessary to consider only two of these.

### 2. Federal Preemption

■ Labor relations in the railroad industry are strongly impacted by special federal legislation. Injuries are covered by the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60 (1982), to the exclusion of state workers' compensation statutes. Representation and collective bargaining are regulated by the Railway Labor Act, 45 U.S.C. §§ 151–188 (1982), and the National Labor Relations Act, 29 U.S.C. §§ 151–187 (1982), has no application.

The Railway Labor Act allows employees to select their own collective bargaining representatives. Employers are obliged to bargain, and the results of bargaining must be memorialized in formal agreements. The act provides methods of dispute resolution. The caselaw employs unfortunate terminology in classifying disputes into "major" disputes, relating to contract negotiations over "wages, hours and working conditions," and "minor" disputes, which relate to the interpretation and application of collective bargaining agreements in defining the rights of individual employees. A compulsory arbitration tribunal, the National Railroad Adjustment Board (NRAB), is established for the

resolution of these minor disputes, so that there will be no interruption of service. The entire process is described in detail in opinions of the Supreme Court of the United States.[1]

The sole remedy for discharge is before the NRAB.[2] Cases consistently hold that even a discharge in retaliation for the filing of an FELA claim is within the jurisdiction of that board, and may not be made the subject of an independent civil action.[3] The defendant argues from these holdings that the plaintiff's contentions constitute a minor dispute which may not be made the subject of a common law action.

The plaintiff makes it clear that he is not seeking a monetary award for discharge, or even for suspension, but rather is seeking damages for harassment for which, he asserts, no remedy is available before the NRAB. He admits that any claim for discharge, or for loss of wages, would be preempted by the Railway Labor Act.

The Court of Appeals observed that Missouri courts have invariably sustained claims of federal preemption when attempts have been made to sue for damages arising out of disputes between railroad employers and their employees.[4] It transferred the case here because of several recent cases adduced by the plaintiff which suggest that the state courts might have a broader role than has been indicated in the past. These cases bear careful consideration.

*Farmer v. United Brotherhood of Carpenters and Joiners of America,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), was an action by a craftsman against a union for "intentional infliction of emotional distress," involving "outrageous conduct". The case had nothing to do with the railroad industry, but it was argued that it was within the exclusive jurisdiction of the National Labor Relations Board because the plaintiff's complaint included charges of discrimination in hiring hall referrals which might have been the subject of an unfair labor practice charge under that act. The court held that the plaintiff could proceed in the state court, because the National Labor Relations Act provided no remedy for the claim of outrageous conduct. The case does not give a complete answer to the contentions before us because the National Labor Relations Act is much less impacting than the Railway Labor Act.[5] The plaintiff in this case introduced no evidence of intentional infliction of emotional distress or outrageous conduct, and did not submit either of these theories to the jury.

The plaintiff places strong reliance on two state cases involving employees covered by the Railway Labor Act. *DeTomaso v. Pan American World Airlines, Inc.,* 220 Cal.Rptr. 493 (Cal.App.1985) now pending before the Supreme Court of California, held that an employee could proceed in state court against his employer (an airline, subject to the Railway Labor Act), on a

**1.** *See, e.g., Brotherhood of Locomotive Engineers v. Louisville & N. R.R.,* 373 U.S. 33, 83 S.Ct. 1059, 10 L.Ed.2d 172 (1963); *Pennsylvania R.R. v. Day,* 360 U.S. 548, 79 S.Ct. 1322, 3 L.Ed.2d 1422 (1959); *Elgin, J. & E. Ry. v. Burley,* 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945).

**2.** *Andrews v. Louisville & N. R.R.,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972), *overruling Moore v. Illinois Central R.R.,* 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089 (1941).

**3.** *Landfried v. Terminal R.R. Ass'n,* 721 F.2d 254 (8th Cir.1983), *cert. denied,* 466 U.S. 928, 104 S.Ct. 1712, 80 L.Ed.2d 185 (1984); *Jackson v. Consolidated Rail Corp.,* 717 F.2d 1045 (7th Cir. 1983), *cert. denied,* 465 U.S. 1007, 104 S.Ct. 1000, 79 L.Ed.2d 233 (1984); *Bay v. Western Pac. R.R. Co.,* 595 F.2d 514 (9th Cir.1979).

**4.** *Burkin v. Burlington Northern R.R.,* 690 S.W.2d 508 (Mo.App.1985); *Alsbury v. Missouri Pac. R.R.,* 670 S.W.2d 87 (Mo.App.1984); *Barchers v. Missouri Pac. R.R.,* 669 S.W.2d 235 (Mo. App.1984).

**5.** *Peterson v. Air Line Pilots Ass'n, Int'l,* 759 F.2d 1161, 1169 (4th Cir.1985), *cert. denied,* ── U.S. ──, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985) ("The RLA has made 'any grievance' arising out of the collective bargaining agreement subject to exclusive arbitral remedies. *See* 45 U.S.C. § 153 First (i) (1982). In contrast the NLRA is limited to specific conduct subject to either protection or prohibition by 29 U.S.C. §§ 157–158 (1982)." *Id.* at n. 18); *Jackson v. Consolidated Rail Corp.,* 717 F.2d 1045 (7th Cir.1983), *cert. denied,* 465 U.S. 1007, 104 S.Ct. 1000, 79 L.Ed.2d 233 (1984).

claim containing elements of defamation, intentional infliction of emotional distress and breach of warranty of title. The employee had purchased a salvage lot from the employer. He was accused of theft and discharged from his job when it was discovered that the lot included property of the carrier which had not been lost or abandoned. The case is not very close to this one. It had its origin in an activity of the employee which was not related to his employment. He had his remedy before the Adjustment Board for wrongful discharge, and was ordered reinstated. The balance of his claim was of a nature which was quite appropriate for tort action.

*Pikop v. Burlington Northern Railroad Co.,* 390 N.W.2d 743 (Minn.1986) involved two consolidated appeals for intentional infliction of emotional distress, a tort recognized by Minnesota law. One of the plaintiffs, a woman, claimed that employees, with the employer's acquiescence, harassed her through sexually oriented expletives, displayed rat carcasses in her presence, and otherwise inflicted indignities upon her, causing emotional problems which required psychiatric treatment. She combined her state claim with a suit under FELA. The other plaintiff alleged a constant course of harassment, also by employees with the employer's indifference, through ethnic slurs, false accusations, practical jokes, and searches of his locker, after which he suffered a heart attack. The Minnesota court held that the state had an interest in providing a remedy for conduct which is "extreme and outrageous" and "intentional and reckless," and that the allowance of a state remedy for such conduct would not interfere with the collective bargaining process of the RLA. Here, in contrast to the California and Minnesota case, and to *Farmer,* outrageous conduct was neither shown by the evidence nor submitted to the jury, and there was no evidence of physical or mental injury.

The plaintiff also cites two recent federal cases holding that there may be recovery for emotional injury inflicted by a railroad employer on an employee under FELA.[6] These are not helpful to the plaintiff. The scope of FELA, the definition of "injury" under that act, and the relationship of the several remedies conferred by the pertinent federal statutes, are pure questions of federal law. This plaintiff made no attempt to state a FELA claim for the conduct alleged in his present petition, although there is no impediment to the joinder of an FELA claim with a claim of "prima facie tort." Likewise not helpful to the plaintiff is *Tello v. Soo Line R.R. Co.,* 772 F.2d 458 (8th Cir.1985), which holds that a civil action may be maintained when the scope of a FELA release is in issue.

The cases just discussed are clearly distinguishable from this one. We do not have to decide whether we would agree or disagree with the results on their particular facts. The conduct shown by the plaintiff's evidence is all closely related to his employment. No element of personal abuse, such as formed the essence of the California and Minnesota cases, was claimed or demonstrated.

Had the plaintiff been discharged improperly, furthermore, there would have been a clear remedy before the NRAB, and no other remedy. It would be strange if a threatened discharge, never carried out, should give rise to a civil action when an actual discharge would not. The request for physical examination was clearly the employer's prerogative, and the plaintiff could be held out of service until the employer was assured of his physical capacity to perform the job. Any loss of time could be the subject of a grievance before the NRAB. Here the plaintiff filed a grievance and abandoned it when he was made whole. It would likewise be strange if the plaintiff could maintain a civil action for suspension with pay, when he could not do so for pay lost through suspension.

---

6. *Buell v. Atchison, T. & S.F. Rwy.,* 771 F.2d 1320 (9th Cir.1985), *cert. granted,* — U.S. ——, 106 S.Ct. 1946, 90 L.Ed.2d 356 (1986); *Lancaster*

v. *Norfolk & W. Rwy.,* 773 F.2d 807 (7th Cir. 1985), *petition for cert. filed,* 55 U.S.L.W. 3075 (1986).

The defendant claims that the plaintiff may prosecute a grievance through the adjustment board for the alleged harassment, and cites several adjustment board decisions.[7] The plaintiff asserts that the collective bargaining agreement is silent on questions of harassment, and that no remedy is available. We do not have to decide what remedies are available before the NRAB. That agency could best make the decision. Harassment which strictly relates to working conditions is the kind of thing which is manifestly subject to the collective bargaining process. If existing remedies are inadequate, the bargaining agent may negotiate for corrective contract provisions. The bargaining agent should not be able to reserve civil actions for the employees it represents, on account of matters which could be, but were not, included in the collective bargaining agreement. We can foresee serious disruption in employer-employee relations if the employer could be haled into court because an employee's supervisor has threatened him with discharge, or because the employer requests a physical examination.

We conclude that the scheme of employer-employee relations established by the Railway Labor Act might be jeopardized by sanctioning actions such as the plaintiff's. We perceive no state interest which outweighs this possibility of disruption, so as to survive the test enunciated in *Farmer, supra.* It is argued that the state has an interest in protecting employees who seek to exercise their federally-created right to sue under FELA. The United States Congress, which created that right, has the primary interest in protecting it, as our state legislature has done for employees who are discriminated against because of having prosecuted workers' compensation claims.[8] Yet, according to the uniform course of decisions, Congress considers the remedy before the NRAB for such retaliation adequate.

We therefore uphold the defendant's claim of federal preemption.

### 3. Prima Facie Tort

■ Having concluded that the plaintiff's claim is preempted by federal law, we might well terminate our consideration of the case. But the present appeal comes to us after the plaintiff has had full opportunity to plead any claim he chooses, and after a full trial. We deem it appropriate in the interest of finality to consider the defendant's claim that the plaintiff has failed to establish a claim of "prima facie tort" under Missouri law.

The plaintiff chose his theory carefully. He expressly disclaims any action for breach of contract, because that would clearly place him in the area of federal preemption. He also admits that there is no evidence of "personal abuse", or "outrageous conduct", necessary to a tort claim for intentional infliction of emotional distress. The verdict directing instruction submitted the bare bones requirements of prima facie tort, as it has usually been defined.

No case resulting in a verdict for the plaintiff on a prima facie tort theory has been affirmed by the Missouri appellate courts. In *Porter v. Crawford & Co.,* 611 S.W.2d 265 (Mo.App.1980), a case in which the defendant was alleged to have maliciously stopped payment on a draft, the cause was remanded for trial. The court discussed the theory of prima facie tort at

**7.** *International Bhd. of Firemen & Oilers v. Burlington Northern, Inc.,* Award No. 9279 (NRAB 2d Div.1982); *Brotherhood of Ry. Carmen v. Baltimore & O. Ry. Co.,* Award No. 8676 (NRAB 2d Div.1981); *Brotherhood of Ry. Carmen v. Washington Terminal Co.,* Award No. 8481 (NRAB 2d Div.1980); *Brotherhood of Ry. Carmen v. Southern Pac. Transp. Co.,* Award No. 31 (Public Law Bd. No. 1946, 1980); *United Transp. Union v. Baltimore & O. R.R.,* Award No. 360 (Public Law Bd. No. 1312, 1979).

**8.** Section 287.780, RSMo 1978, provides:

No employer or agent shall discharge or in any way discriminate against any employee for exercising any of his rights under this chapter. Any employee who has been discharged or discriminated against shall have a civil action for damages against his employer.

length. Writers have suggested that there might be injuries not covered by existing categories of tort remedy for redress of which a civil action should be made available. In most other cases, the application of the doctrine has been rejected by our appellate courts.[9]

This Court has considered the doctrine of prima facie tort only in *Dake v. Tuell*, 687 S.W.2d 191 (Mo. banc 1985), where the opinion spoke of the "misty shroud of prima facie tort." We held that, in the absence of a showing of statutory or contract right, an employee cannot maintain an action for wrongful discharge on a prima facie tort theory.

We find the reasoning of *Dake v. Tuell* pertinent here. The plaintiff's position is that of an employee at will, insofar as our law is concerned, because he has no contract rights which may be asserted by civil action. Inasmuch as the plaintiff would have no right of action for an actual discharge, under his chosen theory, he should have no action for threatened discharge, or for a suspension with or without pay. The employer-employee relationship is often tense. Employees not infrequently are subject to real or perceived indignities. Their normal resort is to the bargaining process and to its fruits—the collective bargaining agreement. The daily contacts of employers and employees are peculiarly unsuitable for scrutiny in a lawsuit, except where there are recognized violations of rights and cognizable injuries.

It is not necessary to consider the propriety of the cryptic verdict directing instruction for an appropriate prima facie tort case, the availability of punitive damages in such a case, or other points of error raised by the defendant. Nor do we have to enter into a discussion about the situations in which an action of prima facie tort might be available. Suffice it to say that the case before us is not one of these.

The judgment is reversed.

HIGGINS, C.J., BILLINGS, WELLIVER, and ROBERTSON, JJ., and MANFORD and PREWITT, Special Judges, concur.

DONNELLY and RENDLEN, JJ., not sitting.

---

**9.** *See, e.g., Centerre Bank v. Distributors, Inc.,* 705 S.W.2d 42, 53–55 (Mo.App.1985); *Costello v. Shelter Mutual Ins. Co.,* 697 S.W.2d 236 (Mo.App.1985); *Dowd v. General Motors Acceptance*

*Corp.,* 685 S.W.2d 868 (Mo.App.1984); *Lundberg v. Prudential Ins. Co.,* 661 S.W.2d 667 (Mo.App. 1983); *Bandag of Springfield, Inc. v. Bandag, Inc.,* 662 S.W.2d 546 (Mo.App.1983).