STATE of Missouri ex rel. the KANSAS CITY RAILWAY COMPANY, Lawrence C. Pattison and Michael F. McClain, Relators,

v.

Honorable Jack E. GANT, Circuit Judge, Sixteenth Judicial Circuit, Respondent.

No. WD 39219.

Missouri Court of Appeals, Western District.

Aug. 18, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 29, 1987.

Application to Transfer Denied Nov. 17, 1987.

R.B. Miller, III, Kansas City, for relators.

Richard L. Wasserstrom, Kansas City, for respondent.

Before GAITAN, P.J., KENNEDY, C.J., and LOWENSTEIN, J.

GAITAN, Presiding Judge.

Relators herein sought original writs of mandamus and prohibition directed toward the Honorable Jack E. Gant alleging that the respondent erred in denying relators' motion to dismiss Counts II, III and IV of Rice's petition because those claims are preempted by the Railway Labor Act and therefore, the respondent lacks subject matter jurisdiction over those claims. We issued a preliminary rule in prohibition and mandamus. That preliminary rule is made absolute.

Glen Rice ("Rice"), plaintiff below, was hired by the Kansas City Southern Railway Company ("Railroad") in 1971 to work in a clerical position. On January 20, 1982, he was asked to resign, and he did so on the next day. He was a dues-paying member of the Brotherhood of Railway, Airline and Steamship Clerks ("BRAC" or "Union"), Lodge No. 326, with a seniority date of October 4, 1971. BRAC is the designated collective bargaining agent for clerical employees of the Railroad, including Rice, and his name was on the BRAC seniority roster on the day he resigned.

Soon after resigning, Rice had several telephone conversations with Thomas J. McGraw ("McGraw"), the Appeals Committeeman, Assistant General Chairman, and District Chairman of BRAC. By letter dated February 12, 1982, Rice complained to McGraw that the Railroad had coerced him to resign under threat of being fired and

that he tendered his resignation "under duress." He contended that he had not been advised of his right to an investigation, to exercise his seniority rights, or the time limitations for doing so. He recited the events leading to his resignation, and he complained of harassment at work.

On February 10, 1982, McGraw wrote L.J. Tamisea, the Railroad's Vice President, demanding that Rice be reinstated with back pay because the railroad did not accord Rice rights under the Railway Labor Act of 1926 as amended. On February 19, 1982, the Railroad advised McGraw that no investigation or hearing was warranted because Rice had resigned.

On June 1, 1982, Rice filed his original petition seeking actual and punitive damages against the Railroad under the Missouri Service Letter Statute, § 290.140, RSMo. Two years later, Rice filed a second amended petition adding two individual defendants Lawrence C. Pattison and Michael F. McClain. Count I of the amended petition asserts a service letter claim against the Railroad only. This count was dismissed by the trial court and is not the subject of this review. Counts II, III and IV, directed to all defendants, assert common law theories: (a) coerced resignation in violation of public policy; (b) tort of outrage; and (c) "conspiracy to intimidate, harass, humiliate plaintiff and force him to resign." All defendants filed timely answers.

On April 7, 1986, defendants moved to amend their answers to Rice's second amended petition to add an affirmative defense alleging that the Railroad Board of Adjustment had exclusive jurisdiction to handle the claims asserted by plaintiff in Counts II, III and IV and that plaintiff had failed to exhaust administrative and arbitral remedies under the Railway Labor Act. Respondent granted defendants leave to amend their answers, which were filed and served on April 30, 1986.

On January 28, 1987, defendants filed a motion asking, *inter alia*, that the court dismiss plaintiff's state common law claims because they constituted "minor disputes" governed and preempted by the Railway

Labor Act. On February 27, 1987, respondent ·conduced a hearing on defendants' motion. Defendants filed the affidavit of John L. Deveney, Vice President for Personnel, The Kansas City Southern Railway Company.

Rice testified at the motion hearing. He stated that he was asked to resign or be terminated. Further, that he had two or three telephone conversations with McGraw the week before McGraw wrote the Railroad demanding an investigation or hearing.

On direct examination McGraw testified that Rice asked him in February of 1982 "if there was anything I could do for him." McGraw responded that because Rice had resigned, he no longer was affiliated with the Union, and if his resignation was not coerced, he had no rights to a grievance proceeding. McGraw also testified that he checked with other union officials, and they told him the union could not help Rice because he had resigned.

On cross-examination McGraw expanded and clarified his testimony as to Rice's status with the union and his rights under the grievance procedures. He acknowledged that the Railway Labor Act imposed upon him the duty to represent union members in any employment grievances or problems they may have. He explained that the Railway Labor Act establishes "very detailed grievance and adjustment procedures" to handle the disputes that arise between employers and employees, and it is his job to initiate those procedures. If the employee is dissatisfied, the dispute goes next to the System Board of Adjustment and ultimately to the Public Law Board of the Third Division, which constitutes the Adjustment Board under the Railway Labor Act. *Id.*

McGraw admitted that he wrote the Railroad on February 10, 1982, demanding a hearing and investigation, and he testified that everything he said in the February 10 letter was true and correct. Because this letter "ask[ed] for a hearing," it "could be" the first step in the grievance procedure. He admitted that the Railroad did not take the position that Rice was not a member of the union or was not covered by the collective bargaining agreement.

McGraw testified that if Rice had been told he could not perform his job and was no longer wanted on the job:

> Then he has seniority because of his dues-paying membership and we could either have him bumped on a job or we could ask for a hearing to either try to keep him on that job that he couldn't perform on any more or he could bump. He has two options at that time.

McGraw admitted that Rice could have exercised rights to bump if the exempt job he held had been abolished. Moreover, if Rice had been told he no longer could perform that job:

> It would have been my opinion that we would have asked for an unjust treatment hearing and the Company would have had to prove he couldn't do the job anymore.

If that happened, the union still would regard the employee as a member of the Union and would help him because of its duty to do so.

In an affidavit filed on March 4, 1987, John L. Deveney, the Railroad's Vice President-Personnel, stated that if Rice or his union had wished to pursue the grievance beyond the Railroad's initial denial, they could have done so under the terms of the collective bargaining agreement and the Railway Labor Act.

On March 9, 1987, respondent disposed of defendants' motion to dismiss or alternatively for summary judgment by denying same. On March 16, 1987, relators filed their petition for writ of prohibition and petition for writ of mandamus in this Court. On March 17, 1987, this Court issued a stop order, and on April 8, 1987, its preliminary rule in prohibition and mandamus.

Railroad employee disputes are governed by the Railway Labor Act, 45 U.S.C. § 151, *et seq.* ("the Act"). *Andrews v. Louisville & Nashville R. Co.,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972). Two of its general purposes are:

(4) to provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions; (5) to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions.

45 U.S.C. § 151a(4) and (5).

The Act directs carriers and employees to attempt to settle their disputes in a conference. 45 U.S.C. § 152, Sixth. If this effort fails, then the dispute is referred to the National Railroad Adjustment Board ("NRAB"). 45 U.S.C. § 153(i). The United States Supreme Court has held that 45 U.S.C. § 153 is a:

mandatory, exclusive and comprehensive system for resolving grievance disputes ... [and was] intended by Congress to be the complete and final means for settling minor disputes.

*Brotherhood of Locomotive Engineers v. L. & N.R. Co.*, 373 U.S. 33, 38–39, 83 S.Ct. 1059, 1062, 10 L.Ed.2d 172 (1963). Congress considered it essential to keep minor disputes out of the courts and within the jurisdiction of a National Railroad Adjustment Board. *Union Pacific R. Co. v. Sheehan*, 439 U.S. 89, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978).

A "minor dispute" grows out of a grievance or the interpretation or application of agreements covering rates of pay, rules or working conditions. *Elgin J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 723, 65 S.Ct. 1282, 1289, 89 L.Ed. 1886 (1945). Minor disputes encompass claims that "grow out of the employment relationship," *Minehart v. Louisville & Nashville Railroad Co.*, 731 F.2d 342, 344 (6th Cir.1984); or stem from a "normal incident of any employment relationship," *Majors v. U.S. Air, Inc.*, 525 F.Supp. 853, 855 (D.Md.1981); or require the "interpretation of the applicable collective bargaining agreement," *Landfried v. Terminal Railroad Association of St. Louis*, 554 F.Supp. 720 (E.D.Mo.1982), *aff'd*, 721 F.2d 254 (8th Cir.1983), *cert. denied*, 466 U.S. 928, 104 S.Ct. 1712, 80 L.Ed.2d 185 (1984).

■ Rice alleges that the Railroad coerced him to resign in 1982 in retaliation for his refusal to participate in illegal pricing practices and for reporting the Railroad's actions to the Interstate Commerce Commission in 1975. Thus, the conduct of both parties "grows out of" and stems from a "normal incident of the employment relationship" and constitutes a "minor dispute" within the meaning of the Act. *Minehard, supra*, 731 F.2d at 344; *Majors, supra*, 525 F.Supp. at 855.

■ In Count II of his petition Rice purports to state a cause of action recognized by this Court in *Boyle v. Vista Eyewear*, 700 S.W.2d 859 (Mo.App.1985), for wrongful discharge in violation of public policy. Wrongful discharge claims are minor disputes under the Act. *Andrews, supra*, 406 U.S. at 324, 92 S.Ct. at 1565.

In *Burkin v. Burlington Northern Railroad Company*, 690 S.W.2d 508 (Mo. App.1985), the Court of Appeals affirmed dismissal of plaintiff's wrongful discharge suit on the ground that his claims were preempted by the Railway Labor Act. Like Rice here, plaintiff had sued the railroad and two individuals for wrongful discharge for firing him after he sustained an on-the-job injury. Burkin claimed that defendants were attempting to cover up the railroad's negligence, deter plaintiff and others from seeking redress for injuries and cause emotional distress. The Court affirmed dismissal of his claims, holding:

Artful pleading does not change the fact this petition concerns a "minor dispute" cognizable under the RLA, 45 U.S.C. § 151 *et seq....* Citations omitted. As the action concerns a "minor dispute" under the RLA, plaintiff's remedy is to employ the procedure provided by the Act, which preempts state law. Citations omitted.

690 S.W.2d at 508.

Similarly, in *Brown v. Missouri Pacific R. Co.*, 720 S.W.2d 357 (Mo. banc 1986), the Court reversed on federal preemption grounds a jury verdict in favor of a railroad employee. Brown alleged that the railroad threatened him with discharge if

he filed suit for injuries sustained in a job-related accident and then held him out of service on the pretext of needing a physical examination after he recovered a judgment for his personal injuries. The Court held that if plaintiff had been discharged improperly, "there would have been a clear remedy before the NRAB, and no other remedy." 720 S.W.2d at 360. A threatened discharge, like plaintiff's, should not give rise to a civil action when an actual discharge would not. *Id.*

In Count III Rice incorporates all allegations in his wrongful discharge count, and then contends that the actions of defendants were "outrageous, shock the minds of individuals of ordinary sensibility and exceed the limits of the behavior which can be tolerated in a civilized society." In Count IV Rice incorporates all allegations in Counts II and III and then alleges that defendants conspired to "intimidate, harass, and humiliate" Rice and to "coerce him to resign."

In *Brown, supra,* the Missouri Supreme Court rejected a similar effort to avoid preemption because the conduct shown by plaintiff's evidence "was closely related to his employment." 720 S.W.2d at 360. There, Brown used the theory of prima facie tort to sue the railroad for "harassment" because a wrongful discharge claim concededly would be preempted by federal law. He argued that the collective bargaining agreement was silent on whether there was a remedy for harassment, and therefore, his claim was not preempted by the Railway Labor Act. The Supreme Court refused to decide even what remedies were available to plaintiff, because the National Railroad Adjustment Board "could best make the decision." 720 S.W.2d at 461. The Court continued as follows:

> Harassment which strictly relates to working conditions is the kind of thing which is manifestly subject to the collective bargaining process. If existing remedies are inadequate, the bargaining agent may negotiate for corrective contract provisions.

720 S.W.2d at 361. Accordingly, the Court reversed the jury's verdict because Brown's claim was preempted by federal law. 720 S.W.2d at 361. Like the plaintiff in *Brown,* Rice is complaining about harassment and retaliatory conduct "closely related to his employment," and the claims Rice makes in Counts II, III and IV are preempted by federal law.

Rice cites *DeTomaso v. Pan American World Airways, Inc.,* 174 Cal.App.3d 1023, 184 Cal.App.3d 344, 220 Cal.Rptr. 493 (1985), and *Pikop v. Burlington Northern R. Co.,* 390 N.W.2d 743 (Minn.1986), to support his argument that Counts III and IV of his petition are not preempted, even if his wrongful discharge claim is. Both cases were discussed at length in *Brown.* The Court found them to be distinguishable and unpersuasive and held that Brown's prima facie tort claim for harassment was preempted by federal law. Since *Brown* was decided, the California Supreme Court has reversed the *DeTomaso* decision on which Rice relies holding that claims of intentional infliction of emotional distress and defamation are preempted by the Railway Labor Act. *DeTomaso v. Pan American World Airways, Inc.,* 43 Cal.3d 517, 235 Cal.Rptr. 292, 293, 733 P.2d 614, 615 (1987).

The Railroad Adjustment Board is "especially competent and specifically designated" to deal with questions involving the interpretation of a collective bargaining agreement. *Order of Railway Conductors v. Pitney,* 326 U.S. 561, 567, 66 S.Ct. 322, 325, 90 L.Ed. 318 (1945). *See also, Alabaugh v. Baltimore & Ohio Railroad Company,* 125 F.Supp. 401, 405, 408 (D.Md.1954), *aff'd* 222 F.2d 861, 864 (4th Cir.1955); *Blue Ribbon Quality Meats, Inc. v. F.T.C.,* 434 F.Supp. 159, 163 (W.D. Mo.1976), *aff'd* 560 F.2d 874 (8th Cir.1977), citing *Endicott Johnson Corp. v. Perkins,* 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424 (U.S.N.Y.1943), and *Myers v. Bethelem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–64, 82 L.Ed. 638 (1938). Primary jurisdiction rests with the administrative agency to determine coverage because even that question calls for application of specialized knowledge to determine techni-

cal and intricate matters of fact, and uniformity is essential to comply with the purposes of the regulatory statute. *Lamar v. Ford Motor Company,* 409 S.W.2d 100 (Mo.1966).

The Railway Labor Act provides the mandatory and exclusive means for resolving minor disputes between railroads and their employees, and the act preempts plaintiff's claims under state law. Accordingly, respondent lacks subject matter jurisdiction over those claims and prohibition lies to prevent him from proceeding on those claims.

KENNEDY, C.J., and LOWENSTEIN, J., concur.