601 A.2d 308

**Robert J. MAYLIE, Jr., Appellant,**

**v.**

**NATIONAL RAILROAD PASSENGER CORPORATION a/k/a Amtrak and Steven F. Scott, James G. Warden and Daniel Sinisi, Appellees.**

Superior Court of Pennsylvania.

Argued May 24, 1991.

Filed Dec. 17, 1991.

Joseph Smukler, Philadelphia, for appellant.

Richard L. Goerwitz, Jr., Philadelphia, for Nat. R.R., appellee.

Paul F.X. Gallagher, Philadelphia, for Warden & Sinisi, appellees.

Before WIEAND, BECK and HUDOCK, JJ.

WIEAND, Judge:

Plaintiff, Robert J. Maylie, Jr., appeals from an order of the trial court dismissing a cause of action alleged against Maylie's employer, the National Railroad Passenger Corporation a/k/a AMTRAK, and Steven Scott, an AMTRAK employee, for civil conspiracy to deprive him of a fair trial in an action under The Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 et seq., for workplace injuries sustained at AMTRAK's shop in Bristol, Pennsylvania. The trial court held that plaintiff's state law claims had been preempted by The Railway Labor Act (RLA), 45 U.S.C. § 151 et seq., and that therefore the state courts were without subject matter jurisdiction. Specifically, the court concluded that the plaintiff's claim was based on a "matrix of facts which are inextricably intertwined with the grievance machinery of the collective bargaining agreement and of the Railway Labor Act." We affirm.

On May 27, 1983, Maylie initiated the instant action by a complaint in which he alleged that AMTRAK and Steven Scott, acting individually and in conspiracy, had threatened, harassed, and intimidated employees in AMTRAK's Bristol Shop in order to prevent the employees from testifying on Maylie's behalf in his FELA action for injuries sustained as an employee of AMTRAK. Maylie averred that as a result of defendants' activities he had been deprived of a fair trial [1] and had suffered impaired health and severe emotional distress.

The Railway Labor Act was promulgated in order to provide a comprehensive framework for the resolution of labor disputes in the railroad industry. *Atchison, Topeka, and Santa Fe Ry. Co. v. Buell,* 480 U.S. 557, 562, 107 S.Ct.

---

1. Plaintiff was granted a new trial in the FELA action and, on April 30, 1991, a judgment was entered in the United States District Court for the Eastern District of Pennsylvania on a jury verdict awarding plaintiff damages in the amount of two million, five hundred sixty-seven thousand, two hundred fifty-nine dollars and sixty cents ($2,567,259.60).

1410, 1414, 94 L.Ed.2d 563 (1987). Two of its general purposes were:

> (4) to provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions;
>
> (5) to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions.

45 U.S.C. § 151a(4) and (5).

In promulgating the Act, Congress specifically expressed an intent to keep labor disputes in the railway industry *out of the courts* and to employ administrative procedures exclusively. See: *Lewy v. Southern Pacific Transp. Co.,* 799 F.2d 1281 (9th Cir.1986). The Supreme Court has reinforced the notion that disputes concerning working conditions are to be decided without intervention by the courts.

> In enacting [the RLA], Congress endeavored to promote stability in labor-management relations in this important national industry by providing effective and efficient remedies for the resolution of railroad-employee disputes arising out of the interpretation of collective-bargaining agreements. The [National Railroad Adjustment Board] was created as a tribunal consisting of workers and management to secure the *prompt, orderly, and final settlement of grievances* that arise daily between employees and carriers regarding *rates of pay, rules and working conditions. Congress considered it essential to keep these so-called "minor disputes" within the NRAB and out of the courts.*

*Union Pacific Railroad Co. v. Sheehan,* 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978) (per curiam) (emphasis added).

■ Two classifications of controversies are distinguished under the Act: "major" and "minor" disputes. "Major disputes" arise out of the formation or change of collective bargaining agreements covering rates of pay, rules, or working conditions. *Elgin, Joliet & Eastern*

*Railway Co. v. Burley,* 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945). "Minor disputes" grow out of grievances or the interpretation or application of agreements covering rates of pay, rules, or working conditions. See 45 U.S.C. § 153, First (i). Initially, minor disputes "must be dealt with through a railroad's internal dispute resolution processes, and if not settled there, may be submitted to a division of the Adjustment Board, or to a Public Law Board, which is an arbitration board chosen by the parties." *Atchison, Topeka, and Santa Fe Ry. Co. v. Buell, supra,* 480 U.S. at 563, 107 S.Ct. at 1414. Hence, the role of the courts in minor disputes is extremely limited. *DeTomaso v. Pan American World Airways, Inc.,* 43 Cal.3d 517, 525, 235 Cal.Rptr. 292, 296, 733 P.2d 614, 618 (1987), *cert. denied,* 484 U.S. 829, 108 S.Ct. 100, 98 L.Ed.2d 60 (1987).

Maylie asserts that AMTRAK's conduct gave rise to an independent cause of action under state tort law and, therefore, the RLA and its grievance mechanism are irrelevant. Defendants counter that Maylie's claim is, in reality, a grievance or minor dispute arising from his employment relationship with AMTRAK, which is governed exclusively by the provisions of the Railway Labor Act. After careful review, we conclude that AMTRAK's acts, as alleged in Maylie's complaint, involve a minor dispute and that therefore the state courts are without subject matter jurisdiction to hear and decide the same.

The United States Supreme Court has spoken to the preemption of minor disputes by the RLA. In *Andrews v. Louisville & Nashville R. Co.,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972), a railroad employee commenced an action for breach of contract because his employer had refused to permit him to return to work following recovery from injuries sustained in an automobile accident. The Court, in affirming the dismissal of the suit, ruled that the plaintiff's remedies under the RLA were exclusive because the claim involved a construction of the collective bargaining agreement. The Court noted that the plaintiff improperly had attempted to plead his way around the RLA:

The fact that petitioner characterizes his claim as one of "wrongful discharge" does not save it from the Act's mandatory provisions for the processing of grievances.... Here it is conceded by all that the only source of petitioner's right not to be discharged, and therefore to treat an alleged discharge as a "wrongful" one that entitles him to damages, is the collective-bargaining agreement between the employer and the union.... His claim is therefore subject to the Act's requirements that it be submitted to the Board for adjustment.

*Andrews v. Louisville & Nashville R. Co.*, 406 U.S. at 323–324, 92 S.Ct. at 1565. It seems clear, therefore, that it is not the characterization of a claim which is controlling but rather its *substance* which must be examined in ascertaining whether an action is a minor dispute preempted by the RLA.

The requirement that a court determine the true foundation of a plaintiff's cause of action is further illustrated in the leading case of *Magnuson v. Burlington Northern, Inc.*, 576 F.2d 1367 (9th Cir.1978), *cert. denied,* 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978). In *Magnuson,* the railroad employee brought a claim against his employer for intentional infliction of emotional distress by virtue of the railroad's alleged conspiracy to cover up the negligence of its supervisory employees which had led to plaintiff's discharge. The court held that plaintiff's claim was a minor dispute governed by the RLA because the alleged conduct was " 'arguably' governed by the collective bargaining agreement or had a 'not obviously insubstantial' relationship to the labor contract." *Id.* at 1369–1370. The court rejected the plaintiff's "artful pleading", warning that if such pleadings circumvented the impact of the RLA, the congressional intent to provide a comprehensive federal scheme for the settlement of employer-employee disputes in the railway industry, without resort to the courts, would be thwarted. *Id.* at 1369. The court concluded that the action was "based on a matrix of facts which are inextricably

intertwined with the grievance machinery of the collective bargaining agreement and of the RLA." *Id.*

In accordance with the interpretation of the RLA as set forth in *Magnuson,* courts have uniformly held that state law claims which are in essence and substance employment grievances are preempted by the RLA. See: *Graf v. Elgin, Joliet & Eastern Railway Co.,* 790 F.2d 1341 (7th Cir.1986) (retaliatory firing for bringing FELA claim); *Jackson v. Consolidated Rail Corporation,* 717 F.2d 1045 (7th Cir. 1983), *cert. denied,* 465 U.S. 1007, 104 S.Ct. 1000, 79 L.Ed.2d 233 (1984) (same); *Campbell v. Pan American World Airways, Inc.,* 668 F.Supp. 139 (E.D.N.Y.1987) (intentional infliction of emotional distress, defamation, and false imprisonment); *Gregory v. Burlington Northern Railroad Co.,* 638 F.Supp. 538 (D.Minn.1986) (wrongful discharge); *Davidson v. Long Island Railroad Co.,* 617 F.Supp. 67 (S.D.N.Y.1985) (retaliatory firing for bringing FELA claim); *Woodrum v. Southern Railroad Co.,* 571 F.Supp. 352 (M.D.Ga.1983) (fraud); *Majors v. U.S. Air, Inc.,* 525 F.Supp. 853 (D.Md.1981) (false imprisonment and defamation); *Carson v. Southern Railroad Co.,* 494 F.Supp. 1104 (D.S.C.1979) (defamation); *DeTomaso v. Pan American World Airways, supra* (defamation and intentional infliction of emotional distress).

In the present complaint, Maylie alleges that the railroad and Steven Scott "brought about an atmosphere of constraint at AMTRAK's Bristol Shops" by threatening, harassing, and retaliating against employees who brought claims against the company, or who aided other claimants against the company. Maylie avers that this "conspiracy" impacted him directly; and, therefore, he seeks compensatory and punitive damages. However, each of Maylie's allegations is "inextricably intertwined" with rights accorded him and his co-employees by their collective bargaining agreement. The resolution of Maylie's case can only depend upon a court's scrutinizing the rights given to all employees under the labor contract. Such an examination runs contrary to the underlying policy of the RLA to

provide a resolution of minor disputes without resorting to the courts. See: *Magnuson v. Burlington Northern, Inc., supra.*

The fact that an inquiry into the parties' labor agreement would have to be undertaken is magnified by the substance of Maylie's complaint itself. The claim asserted is not for threats or harassment made against Maylie himself, but, according to the complaint, for activity directed to *all* individuals working in the Bristol Shop. Hence, the state court would necessarily be required to delve into the entire spectrum of labor relations as it existed between all shop employees and AMTRAK's management. In order for a court to decide whether there was *misconduct* on the part of AMTRAK towards its employees, it would have to interpret the collective bargaining agreement and determine what constitutes *permissible* conduct by AMTRAK management.

Maylie's conspiracy claim is similar to the one alleged in *Spencer v. Missouri Pacific Railroad Co.*, 581 F.Supp. 1220 (E.D.Mo.1984), *aff'd*, 743 F.2d 627 (8th Cir.1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 912, 83 L.Ed.2d 925 (1985). In *Spencer*, a railroad employee charged his employer with intentional conspiracy to interfere with his employment rights, a tort action based on Arkansas law. The court held that the plaintiff could not circumvent the requirements of the RLA by characterizing his claim as one arising under state law. The court stated:

> The fact that plaintiff claims conspiracy in addition to actual interference with his employment rights does not render his claim sufficiently different from normal disputes concerning interpretation of a collective bargaining agreement as to create an exception to the mandatory requirement that minor disputes be settled by the NRAB.

*Spencer v. Missouri Pacific Railroad Co., supra* at 1221.

Our conclusion that Maylie's harassment claim has been preempted by the RLA is also in accord with the decision of the Supreme Court of Missouri in *Brown v. Missouri Pacific Railroad Co.*, 720 S.W.2d 357 (1986), *cert. denied*, 481

U.S. 1049, 107 S.Ct. 2180, 95 L.Ed.2d 836 (1987). There, the plaintiff had sued the railroad and recovered damages under FELA. Subsequently, plaintiff filed an action for "prima facie tort" in the state court, alleging that the railroad, through its supervisory employees and claims agents, had undertaken systematic retaliatory harassment by, inter alia, threatening him with discharge if he filed suit. The plaintiff asserted that the collective bargaining agreement was silent on the question of harassment and that, therefore, no remedy was available thereunder. The court refused to decide even what remedies were available to plaintiff, because the National Railroad Adjustment Board "could best make the decision." *Id.* at 361. The court reasoned as follows:

Harassment which strictly relates to working conditions is the kind of thing which is manifestly subject to the collective bargaining process. If existing remedies are inadequate, the bargaining agent may negotiate for corrective contract provisions. The bargaining agent should not be able to reserve civil actions for the employees it represents, on account of matters which could be, but were not, included in the collective bargaining agreement. We can foresee serious disruption in employer-employee relations if the employer could be haled into court because an employee's supervisor has threatened him with discharge....

*Brown v. Missouri Pacific Railroad Co., supra,* 720 S.W.2d at 361. Therefore, the Court rejected the plaintiff's effort to avoid preemption. His claim "was closely related to his employment" and, as such, subject to the mandatory provisions of the RLA. Like the plaintiff in *Brown,* Maylie complains in the instant case of harassment and retaliatory conduct closely related to his employment at AMTRAK. Such claims have been preempted by federal law.

Finally, we reject plaintiff's argument that "outrageous" conduct by AMTRAK requires us to recognize an exception to the preemption doctrine as it did in *Farmer v. Brotherhood of Carpenters, Local 25,* 430 U.S. 290, 97 S.Ct. 1056,

51 L.Ed.2d 338 (1977). There, an employee/local union officer had been subjected to an ongoing campaign of personal abuse and harassment, including frequent public ridicule and incessant public abuse as a result of a disagreement with other union officials. The United States Supreme Court held that Farmer's state action for emotional distress was not preempted by the National Labor Relations Act (NLRA) because "the State has a substantial interest in regulation of the conduct at issue." *Id.* at 302, 97 S.Ct. at 1064. *Farmer* involved the NLRA, a federal law which only focuses on specific conduct which Congress had deemed subject to prohibition or protection. See: *Jackson v. Consolidated Rail Corp., supra,* 717 F.2d at 1052; 29 U.S.C. § 157–158. Conversely, the RLA was created "to provide for the prompt and orderly settlement of *all* disputes growing out of grievances, or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C. § 151a(5) (emphasis added). In *Farmer*, the Supreme Court determined that there was little potential for interference with the federal labor scheme because the state court action could be resolved without requiring any determination as to the underlying labor dispute.

In any event, Maylie has failed to identify a state interest sufficiently compelling to survive the test set forth in *Farmer*. This same issue was analyzed by the court in *Majors v. U.S. Air, Inc.,* 525 F.Supp. 853 (D.Md.1981), where the plaintiff had brought a state action for defamation and false imprisonment against his employer. In rejecting plaintiff's argument that the *Farmer* exception applied to his case, the court stated:

> Majors asserts, without explanation, that the state has a substantial interest in protecting its citizens from the abusive conduct he was allegedly subjected to by [his employer]. It is fair to say that the state always has an interest in protecting its residents from tortious conduct; however, *Farmer* requires something more. To avoid preemption, that interest must be "so deeply rooted in

local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act."

*Majors v. U.S. Air, Inc.*, 525 F.Supp. at 855. (citations omitted). Maylie's assertion that AMTRAK has attempted to deprive him of his federally-created right to sue under FELA does not present such a "deeply rooted" interest. "The United States Congress, which created that right, has the primary interest in protecting it.... Yet, according to the uniform course of decisions, Congress considers the remedy before the NRAB for such retaliation adequate." *Brown v. Pacific Railroad Co., supra*, 720 S.W.2d at 361.

■ Maylie's claims that AMTRAK's actions were in violation of his "state constitutional rights of due process and equal protection of the law" are also without merit. He has failed to allege any state constitutional claim cognizable under Pennsylvania law. The conduct complained of was private in character; it did not involve "state action." Defendants have no statutory or financial relationship with the Commonwealth; the government cannot be said to have exercised control of or influence over the operations of defendants' business; and the state cannot be deemed responsible for the specific conduct of which Maylie complains. AMTRAK is not an "arm of the state" for constitutional purposes. See: *Cable Investments, Inc. v. Woolley*, 680 F.Supp. 174 (M.D.Pa.1987) (applying Pennsylvania constitutional provisions); *Crozer Chester Medical Center v. May*, 352 Pa.Super. 51, 506 A.2d 1377 (1986). The provisions of the Constitution do not reach the acts of purely private actors. *Western Pa. Socialist Workers v. Connecticut Gen. Life Ins. Co.*, 335 Pa.Super. 493, 485 A.2d 1 (1984), *aff'd*, 512 Pa. 23, 515 A.2d 1331 (1986).

We conclude, therefore, that Maylie's claims have been preempted by the Railroad Labor Act which provides the mandatory and exclusive means for resolving minor disputes between railroads and their employees. Therefore, the state courts lack subject matter jurisdiction to entertain

such claims. It follows that the Motion to Dismiss for Lack of Jurisdiction was properly granted by the trial court.[2]

Affirmed.

**2.** We disagree with Maylie's assertion that either Judge Ditter or Judge Pollak previously determined that the state court had jurisdiction over his cause of action. Judge Ditter's opinion dealt with a motion for remand and had nothing to do with the issue of subject matter jurisdiction of state courts. Similarly, as the trial court observed, Judge Pollak's opinion involved the defendants' motion for a permanent injunction under the Anti–Injunction Act, 28 U.S.C. § 2283, and did not address either the merits of Maylie's claims or the issue of preemption.