J-A24042-19

2019 PA Super 346

| | | |
|---|---|---|
| MELISSA DEAL AND RICHARD DEAL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| THE CHILDREN'S HOSPITAL OF | : | No. 3235 EDA 2018 |
| PHILADELPHIA | : | |

Appeal from the Order Entered October 4, 2018
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 170900803

BEFORE:   BENDER, P.J.E., DUBOW, J., and COLINS, J.[*]

OPINION BY COLINS, J.:                       **FILED NOVEMBER 19, 2019**

This is an appeal from an order of Court of Common Pleas of Philadelphia County (trial court) granting summary judgment for the defendant in a wrongful discharge case brought by Melissa Deal (Deal) and her husband (collectively, Plaintiffs) against Deal's former employer, The Children's Hospital of Philadelphia (Hospital).  For the reasons set forth below, we affirm.

The record before the trial court established the following undisputed facts.

Deal was employed by the Hospital from 1999 to 2015, initially as an extern and from July 2000 on as a registered nurse.  Deal was an at-will employee.  Deal Dep., 6/21/18, at 108-09; Hospital Non-Bargaining Unit

_____

[*] Retired Senior Judge assigned to the Superior Court.

Dispute Resolution Policy § 2; Hospital Rules of Conduct § 2. In her work as a nurse at the Hospital, Deal had access to confidential patient information, including patients' dates of birth and social security numbers. Deal Dep., 6/21/18, at 105, 113.

In August 2013, outside of her employment at the Hospital, Deal was hired to provide home care for James Mooney, the father of a neighbor, in the neighbor's home. Defendant's Motion for Summary Judgment, Statement of Undisputed Facts ¶7 & Plaintiffs' Answer to Defendant's Motion for Summary Judgment, Response to Statement of Undisputed Facts ¶¶6-7. Deal began providing those services in September 2013 and was paid $30 per hour for those services. Defendant's Motion for Summary Judgment, Statement of Undisputed Facts ¶9 & Plaintiffs' Answer to Defendant's Motion for Summary Judgment, Response to Statement of Undisputed Facts ¶9; Deal Dep., 6/21/18, at 57-58. On October 1, 2013, Mooney gave Deal a power of attorney and made a revised will that named Deal as executrix. Deal Dep., 6/21/18, at 59-60.

On October 10, 2013, under her power of attorney for Mooney, Deal wrote a $10,000 check payable to herself and a $10,000 check payable to her husband. Plaintiffs' Answer to Defendant' Motion for Summary Judgment, Response to Statement of Undisputed Facts ¶18; Deal Dep., 6/21/18, at 59-60, 67-68. On October 10, 2013, Deal also helped Mooney make changes to the beneficiaries of his investment account that included adding herself as a

beneficiary. Deal Dep., 6/21/18, at 68-69; N.T. Criminal Trial, 5/25/17 at 198-202. Mooney, who was terminally ill with prostate cancer, died on October 12, 2013. Deal Dep., 6/21/18, at 56, 69; Plaintiffs' Answer to Defendant's Motion for Summary Judgment, Response to Statement of Undisputed Facts ¶25.

Following Mooney's death, Mooney's family accused Deal of improper conduct with respect to the investment account, the $10,000 checks, and payments that she made as executrix and petitioned to remove her as executrix of Mooney's estate. Petition to Remove Executrix ¶¶13-14, 16, 28-29, 31-36. On August 21, 2015, the Delaware County District Attorney charged Deal with theft and related offenses arising out of the $10,000 checks, the change to the investment account beneficiaries, and checks that Deal wrote on the estate account after Mooney's death. Plaintiffs' Answer to Defendant's Motion for Summary Judgment, Response to Statement of Undisputed Facts ¶38; Police Criminal Complaint. Deal was arrested on these charges on August 26, 2015. Plaintiffs' Answer to Defendant's Motion for Summary Judgment, Response to Statement of Undisputed Facts ¶39. Before the charges were filed, Deal had told the Hospital that the family of a person for whom she had provided care outside of work had made allegations of financial misconduct against her and that there was a criminal investigation. Deal Dep., 6/21/18, at 111-14; Legner Dep., 6/29/18, at 66-68, 78-81.

On August 25 and 27, 2015, Mooney's granddaughter sent emails to the Hospital notifying it of the criminal charges against Deal and Deal's arrest, attaching links to the criminal docket, and stating

> Melissa Deal, a registered nurse who works at Children's Hospital of Philadelphia (CHOP) offered to provide hospice care in exchange for monetary compensation. Melissa was paid $3,000 dollars up-front and given a rate of $30 per hour to provide ongoing care and medicinal delivery.
> Several days (8) after arriving at the residence, Melissa had convinced my grandfather (James Mooney) that he should change his will and announce that Melissa was to be the executrix of his estate moving forward. We were all in agreement as we trusted Melissa and none of us were in a position or had any experience to be the sole executor/executrix (big mistake).
> My Grandfather passed away prematurely in early October 2013 in Melissa Deals arm and just hours after she made online changes to his beneficiary accounts to illegally include herself as a 1/6th recipient of a $350,000 account. She spent the next 18 months bullying me and my mother and taking thousands of dollars, jewelry, family treasures and caused horrible pain at a time of attempting closure and grieving for the loss of life of our loving family member.

8/25/15, 8/27/15 Mozol Emails; Defendant's Motion for Summary Judgment, Statement of Undisputed Facts ¶¶51-52 & Plaintiffs' Answer to Defendant's Motion for Summary Judgment, Response to Statement of Undisputed Facts ¶¶51-52. The granddaughter sent the Hospital a further email on September 2, 2015 with a link to a local newspaper story with a heading "nurse-faces-charges-of-stealing-88000-from-dying-mans-account." 9/2/15 Mozol Email; Legner Dep., 6/29/18, at 74-75.

On September 7, 2015 Deal sent the Hospital an email that stated the following concerning the criminal charges against her:

> I was executor for an estate and the gentleman, [J]ames [M]ooney, had left my fami[l]y and I some money. He did not want the family aware until the estate was closed, but I had to be honest and tell them after he died. I still managed the estate and had it completed by [D]ec 20, 2014. Of course, under his POA and Will, my legal fees were to be paid out of estate money, which is what we did.
>
> \*          \*          \*
>
> The number [in the criminal charges], 88,000.00-none of us know where that number is coming from. We are looking at paying back legal fees that I knew may need to be paid back by me.

9/7/15 Deal Email to Legner; Plaintiffs' Answer to Defendant's Motion for Summary Judgment, Response to Statement of Undisputed Facts ¶¶54-55; Deal Dep., 6/21/18, at 117.

On September 9, 2015, the Hospital placed Deal on 90-day unpaid administrative leave during which Deal continued to receive her employee benefits and sent her a letter stating:

> Due to the criminal charges pending against you related to theft from an elderly person in your care and the surrounding publicity, and because as a CHOP nurse you likewise care for a vulnerable population and have access to patient demographic information and identifiers, in the interest of caution, CHOP is removing you from your role as a registered nurse. In particular, you will be placed on a 90-day, unpaid administrative leave. If, during this 90-days, you are exonerated from the charges, you will be returned to your position and paid back pay. However, if the process takes longer than 90-days or there is a conviction on any of the charges, your employment will be terminated.

9/9/15 Legner to Deal Letter; Defendant's Motion for Summary Judgment, Statement of Undisputed Facts ¶60 & Plaintiffs' Answer to Defendant's Motion for Summary Judgment, Response to Statement of Undisputed Facts ¶60. The criminal charges were not resolved within the 90 days and remained

unresolved in January 2016, and Hospital terminated Deal's employment on January 8, 2016. 1/8/16 Legner Memorandum; Legner Dep., 7/24/18, at 104. On May 26, 2017, Deal was acquitted of the criminal charges. Plaintiffs' Complaint ¶60; Defendant's Answer ¶60. Deal did not apply to be rehired or reinstated by Hospital after her acquittal. Defendant's Motion for Summary Judgment, Statement of Undisputed Facts ¶74 & Plaintiffs' Answer to Defendant's Motion for Summary Judgment, Response to Statement of Undisputed Facts ¶74.

On September 11, 2017, Plaintiffs filed the instant action against the Hospital. Plaintiffs' two-count complaint asserted a claim by Deal for wrongful discharge alleging that Hospital's termination of her employment based on the criminal charges violated public policy and a claim by Deal's husband for loss of consortium. Plaintiffs' Complaint ¶¶61-72. During discovery, the Hospital sought to subpoena records from the criminal case and the civil actions between the Mooney family and Deal, and Plaintiffs objected. The trial court on May 22, 2018, overruled Plaintiffs' objections and ordered that the subpoenas could be served but that no privileged information was to be produced in response to the subpoenas. Trial Court Orders, 5/22/18.

On August 6, 2018, the Hospital filed a motion for summary judgment asserting that Plaintiffs had no cause of action for Deal's discharge because Deal was an at-will employee. On October 4, 2018, the trial court granted the Hospital's motion for summary judgment. This timely appeal followed.

Plaintiffs presents the following issues for our review:

A. Did the Trial Court err as a matter of law in granting CHOP's Motion for Summary Judgment where there were genuine issues of material fact that precluded a finding that CHOP's termination of Deal's employment did not contravene any important Pennsylvania public policy.

B. Did the trial court err as a matter of law in granting CHOP's Motion for Summary Judgment where there were … genuine issues of material fact that precluded a finding by the court that … CHOP's termination of Deal's employment was based upon separate plausible and legitimate reasons not in contravention of any important Pennsylvania public policy requiring that the issue be determined by a jury pursuant to **McDonnell Douglas Corp. v. Green**, 411 U.S. 792 (1973).

 C. Did the trial court err in permitting CHOP to issue subpoenas to obtain records of the attorneys involved in the litigation of the civil and criminal proceedings arising out of the conduct undertaken by Deal that served as the foundation for the criminal charges filed against her, where none of those alleged and highly contested facts were known or considered by CHOP in its decision to terminate Deal and were therefore not admissible nor calculated to lead to admissible evidence and were sought and used by CHOP solely to embarrass Deal and improperly impugn her character by being included in the facts recited to the court in CHOP's Motion for Summary Judgment.

Plaintiffs' Brief at 2-3. Our standard of review of the trial court's grant of summary judgment is *de novo* and the scope of review is plenary. **Pyeritz v. Commonwealth**, 32 A.3d 687, 692 (Pa. 2011). Summary judgment is properly granted in favor of the defendant where the plaintiff has no cause of action as a matter of law under the undisputed facts. Pa.R.C.P. 1035.2(1) (summary judgment may be granted "whenever there is no genuine issue of any material fact as to a necessary element of the cause of action" and movant

is entitled to judgment as a matter of law); ***Kibler v. Blue Knob Recreation, Inc.***, 184 A.3d 974, 978–81 (Pa. Super. 2018).

Under Pennsylvania law, employment is presumed to be at-will unless it is shown that the parties contracted to restrict the right to terminate employment. ***McLaughlin v. Gastrointestinal Specialists, Inc.***, 750 A.2d 283, 286-87 (Pa. 2000); ***Krolczyk v. Goddard Systems, Inc.***, 164 A.3d 521, 527 (Pa. Super. 2017); ***Wakeley v. M.J. Brunner, Inc.***, 147 A.3d 1, 5 (Pa. Super. 2016). Where the plaintiff has acknowledged that the employment is at-will, the presumption of at-will employment controls. ***Wakeley***, 147 A.3d at 5-6. An at-will employment relationship may be terminated by either the employer or the employee at any time, for any reason, or for no reason. ***Krolczyk, Inc.***, 164 A.3d at 527; ***Wakeley***, 147 A.3d at 5.

Here, the undisputed evidence established that Deal's employment was at-will. Deal testified in her deposition:

> Q. You were an at-will employee at the Children's Hospital of Philadelphia, correct?
> A. Correct.
> Q. And you understand that that means you can be fired for any reason or no reason, correct?
> A. Correct.

Deal Dep., 6/21/18, at 108-09. The Hospital's documents likewise unambiguously stated that Deal's employment was at-will and could be terminated for any reason or no reason at all. The Hospital's Non-Bargaining Unit Dispute Resolution Policy stated:

- 8 -

Employment at the Hospital is at-will, and nothing in this policy modifies or is intended to modify the at-will relationship. The Hospital maintains the right to terminate employees for any reason or no reason at all, with or without notice, consistent with the doctrine of at-will employment.

Hospital Non-Bargaining Unit Dispute Resolution Policy § 2. The Hospital's

Rules of Conduct stated:

[N]othing in this policy creates a contract of employment or is intended to create a contract of employment between an employee and the Hospital. The Hospital maintains the right to discipline or terminate employees consistent with the doctrine of at-will employment as applicable.
… The Rules of Conduct do not address every situation, nor is corresponding disciplinary action limited to the listed violations. The Hospital reserves the right to impose the level of discipline it, in its sole discretion, deems appropriate based on each specific set of circumstances.

Hospital Rules of Conduct § 2.[1]

---

[1] Plaintiffs argue in their brief that Deal's employment was not at-will. Plaintiffs' Statement of Questions did not include this as an issue, asserting only that there were disputes of material fact with respect to whether the discharge contravened public policy and with respect to the reasons for the discharge. Appellants' Brief at 2-3. This issue is therefore waived. Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby"); *Ramalingam v. Keller Williams Realty Group, Inc.*, 121 A.3d 1034, 1041 n.11 (Pa. Super. 2015). Even if it were not waived, however, it is without merit. The sole factual bases that Plaintiffs assert for this argument are the Hospital's Non-Bargaining Unit Dispute Resolution Policy and Rules of Conduct. If an employee handbook expressly states that the employment is at-will, it does not override the presumption that the employment is at-will, even if it creates contractual rights to other benefits. *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 940-43 (Pa. Super. 2011), *aff'd*, 106 A.3d 656 (Pa. 2014); *Bauer v. Pottsville Area Emergency Medical Services, Inc.*, 758 A.2d 1265, 1269-70 (Pa. Super. 2000). Here, as discussed above, both the Hospital's Non-Bargaining Unit Dispute Resolution Policy and Rules of Conduct expressly and clearly

As a general rule, an at-will employee has no common law cause of action for wrongful discharge against her employer. *McLaughlin*, 750 A.2d at 287; *Stewart v. FedEx Express*, 114 A.3d 424, 427 (Pa. Super. 2015). A limited exception to this rule exists and an action for wrongful discharge can be brought only where the termination of employment implicates a clear mandate of Pennsylvania public policy. *Weaver v. Harpster*, 975 A.2d 555, 563 (Pa. 2009); *McLaughlin*, 750 A.2d at 287; *Greco v. Myers Coach Lines, Inc.*, 199 A.3d 426, 436 (Pa. Super. 2018); *Stewart*, 114 A.3d at 427.

This public policy exception applies and permits a cause of action for wrongful discharge where the employer discharges an employee for refusing to commit a crime, where the employer discharges an employee for complying with a statutorily imposed duty, or where the employer is specifically prohibited from discharging the employee by statute. *Greco*, 199 A.3d at 436; *Stewart*, 114 A.3d at 428. Termination of employment in retaliation for a workers' compensation or unemployment compensation claim can also constitute a violation of public policy that supports a wrongful discharge cause

---

stated that employment was at-will. Moreover, *Greene v. Oliver Realty, Inc.*, 526 A.2d 1192 (Pa. Super. 1987), relied upon by Plaintiffs, is completely distinguishable from the facts in this case. In *Greene*, the plaintiff alleged that his employer promised him lifetime employment in exchange for working at a lower pay rate and that he understood that he had a contract for lifetime employment. *Id.* at 1193, 1202. Here, as discussed above, Deal admitted that she knew that she was an at-will employee and could be fired for any reason or no reason.

of action. ***Rothrock v. Rothrock Motor Sales, Inc.***, 883 A.2d 511, 516-17 (Pa. 2005); ***Shick v. Shirey***, 716 A.2d 1231, 1237-38 (Pa. 1998); ***Highhouse v. Avery Transportation***, 660 A.2d 1374, 1377-78 (Pa. Super. 1995).

In contrast, outside of those narrow types of circumstances, claims that a discharge falls within the public policy exception have been repeatedly rejected, even where the plaintiff has invoked constitutional provisions or the employee was discharged for raising safety issues. ***See***, ***e.g.***, ***Weaver***, 975 A.2d at 564-72 (no cause of action based on policy of PHRA and Equal Rights Amendment for sex discrimination discharge where employer was private employer not covered by the PHRA); ***McLaughlin***, 750 A.2d at 288-90 (no cause of action for discharge in retaliation for claiming federal OSHA violation); ***Greco***, 199 A.3d at 428-29, 436 (no cause of action for challenging whether co-employee's medical condition permitted him to drive even though "employer acted vindictively, and exhibited poor business judgment"); ***Stewart***, 114 A.3d at 426, 428-29 (no cause of action based on public policy of constitutional right to bear arms where private employer discharged employee for having licensed gun in the glove compartment of his car).

Plaintiffs do not contend that the Hospital discharged Deal for refusing to violate a law, for complying with a statutory duty, or for filing or refusing to interfere with a workers' compensation, unemployment or other claim against it. Rather, Plaintiffs' claim is that Deal was discharged based on the

pending criminal charges against her and that this allegedly violates the public policy of the presumption of innocence in Article I, Section 9 of the Pennsylvania State Constitution and Criminal History Record Information Act (CHRIA), 18 Pa.C.S. §§ 9101-9183.  Plaintiffs' Complaint ¶¶ 49-50, 62-70.[2]

Such claims do not satisfy the requirements of the public policy exception to at-will employment.  Neither Article I, Section 9 nor CHRIA applies to an employer's discharge of an employee.  Article I, Section 9 expressly states that it is limited to criminal prosecutions.  Pa. Const. Art. 1, § 9 ("**In all criminal prosecutions** the accused hath a right to be heard by himself and his counsel … and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land") (emphasis added).  The only provision of CHRIA that relates to employer use of information concerning arrests or criminal charges against an individual, Section 9125, applies to hiring decisions, not to decisions to discharge existing

_____

[2] In their complaint, Plaintiffs also alleged a public policy under Article I, Section 1 and Article I, Section 10 of the Pennsylvania State Constitution. Plaintiffs' Complaint ¶62.  Plaintiffs have not set forth any clear argument concerning Article I, Section 1 or 10 in this appeal.  Neither of these constitutional provisions could provide a public policy that applies to this case, in any event, because they apply only to government actors, not to private entities.  *Dillon v. Homeowner's Select*, 957 A.2d 772, 776-77 (Pa. Super. 2008); *Maylie v. National R.R. Passenger Corp.*, 601 A.2d 308, 313 (Pa. Super. 1991).

employees. 18 Pa.C.S. § 9125(a) ("Whenever an employer is in receipt of information which is part of **an employment applicant's** criminal history record information file, it may use that information **for the purpose of deciding whether or not to hire the applicant**, only in accordance with this section") (emphasis added).

Where a legislative or constitutional provision does not apply to the employment relationship at issue, it cannot supply the clear mandate of public policy required to support a wrongful discharge action. **Weaver**, 975 A.2d at 564-72. Accordingly, the courts of this Commonwealth have repeatedly and consistently held that discharges of existing employees based on criminal charges or accusations of criminal conduct do not fall within the public policy exception and that claims like those asserted by Plaintiffs do not state a cause of action for wrongful discharge. **Gillespie v. St. Joseph's University**, 513 A.2d 471, 472-73 (Pa. Super. 1986) (no cause of action for discharge based on false allegations of criminal conduct); **Cisco v. United Parcel Services, Inc.**, 476 A.2d 1340, 1343-44 (Pa. Super. 1984) (no cause of action for discharge based on criminal charges or refusal to rehire after acquittal, discharge did not violate public policy of presumption of innocence or CHRIA); **Rank v. Township of Annville**, 641 A.2d 667, 670 (Pa. Cmwlth. 1994) (no cause of action for discharge based on criminal charges that were dismissed, discharge did not violate public policy of presumption of innocence); **see also Weaver**, 975 A.2d at 564 (citing **Gillespie** and **Cisco** with approval).

Plaintiffs cite no decision of any court of this Commonwalth that holds that discharge of an at-will employee based on pending criminal charges or accusations is actionable under the public policy exception.[3]

Plaintiffs argue in their second issue that Hospital's statements that the charges were relevant to her employment and it was acting out of concern for its patients were pretext. Plaintiffs contend that summary judgment could not be granted because the validity of the concerns that it articulated and the relevance of the charges to Deal's nursing position were in dispute. This argument likewise fails.

Where the reason for the discharge alleged by the plaintiff satisfies the public policy exception, summary judgment cannot be granted on the ground that the employer discharged the plaintiff for another, legitimate reason if

---

[3] Plaintiffs have also argued that Deal has a claim for violation of the procedures in the Hospital's Dispute Resolution Policy. Again, Plaintiffs' Statement of Questions did not include this as an issue. Appellants' Brief at 2-3. Like Plaintiffs' argument concerning at-will employment, the argument that the Hospital violated its employment policies is therefore waived. Pa.R.A.P. 2116(a); **Ramalingam**, 121 A.3d at 1041 n.11. In any event, this argument, too, would fail on the merits. Plaintiffs did not plead any claim in their complaint for breach of contract or failure to follow disciplinary procedures. Rather, the complaint asserted only a claim for wrongful discharge based on public policy and did not refer to any Hospital policies or procedures at all. Plaintiffs' Complaint ¶¶61-70. Nor was there evidence of a breach of the dispute resolution policy. The dispute resolution policy requires employees who wish to appeal disciplinary actions and terminations to file a written appeal within five business days. Hospital Non-Bargaining Unit Dispute Resolution Policy §§ 2-5. There was no evidence that Deal filed an appeal of her suspension or termination under the dispute resolution policy. Legner Dep., 7/24/18, at 122.

there is evidence sufficient to support a finding that the discharge was for the reason that violates public policy. ***Krolczyk***, 164 A.3d at 528-30 (reversing summary judgment because there was evidence to support finding that plaintiffs were discharged for complying with statutory duty to report child abuse or neglect, which satisfied the public policy exception, even though employer claimed that plaintiffs were discharged for improperly restraining a student). If the reason for the discharge asserted by the plaintiff does not fall within the public policy exception, however, it is immaterial whether the employer's articulated reasons are valid and disputes concerning the employer's reasons cannot defeat summary judgment. ***See Stewart***, 114 A.3d at 428 (rejecting the argument that disputes over whether plaintiff had violated company policy barred dismissal of wrongful discharge claim because, where plaintiff did not show a public policy violation, "it matters not whether [employer] articulated no reason or a bad reason for terminating [plaintiff's] employment").

Here, Plaintiffs contend that Deal was discharged because criminal charges had been filed against her. Because that reason does not fall with the public policy exception, there is no cause of action for wrongful discharge under their own allegations. Any disputes as to the validity of the Hospital's statements or concerns were therefore irrelevant and immaterial and cannot constitute grounds for denying summary judgment.

Plaintiffs' third issue, whether the trial court erred in overruling objections to discovery subpoenas, is waived. Plaintiffs list this as an issue in their Statement of Issues, but set forth no law or argument on this issue in the argument section of their brief. Instead, their argument on this issue consists of a single sentence stating that they rely on their filings in the trial court, which they do not set forth and do not attach to their brief or include in the reproduced record. Appellants' Brief at 31-32.

Rule of Appellate Procedure 2119(a) requires that each distinct issue in the argument section of a brief contain "such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a); **see also Commonwealth v. Pi Delta Psi, Inc.**, 211 A.3d 875, 883 (Pa. Super. 2019). When an appellant cites no authority on an issue, that issue is waived. **Pi Delta Psi, Inc.**, 211 A.3d at 883; **In re Estate of Whitley**, 50 A.3d 203, 209 (Pa. Super. 2012). Incorporation by reference of other documents does not comply with Rule 2119(a). **Commonwealth v. Briggs**, 12 A.3d 291, 342-43 (Pa. 2011); **Moses Taylor Hospital v. White**, 799 A.2d 802, 804-05 (Pa. Super. 2002). Accordingly, where, as here, an appellant's argument on an issue merely refers to or incorporates by reference prior legal filing, that issue is waived. **Briggs**, 12 A.3d at 342-43; **Moses Taylor Hospital**, 799 A.2d at 804-05.

For the foregoing reasons, we hold that the Hospital's discharge of Deal based on the pendency of criminal charges against her does not fall within the

limited public policy exception to an employer's right to discharge an at-will employee for any reason and that Deal, as a matter of law, had no cause of action for wrongful discharge. The trial court therefore did not err in granting the Hospital's motion for summary judgment.

Order affirmed.

P.J.E. Bender joins the Opinion.

Judge Dubow Concurs in the Result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/19/19