J-A06009-22

2022 PA Super 52

| | | |
|---|---|---|
| 9795 PERRY HIGHWAY MANAGEMENT, LLC | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| WALTER BERNARD AND WYNTON BERNARD | : : | No. 926 WDA 2021 |
| Appellants | : : | |

Appeal from the Order Entered July 7, 2021
In the Court of Common Pleas of Allegheny County
Civil Division at GD-20-007843

BEFORE:   MURRAY, J., SULLIVAN, J., and COLINS, J.[*]

OPINION BY MURRAY, J.:                    **FILED:  March 29, 2022**

Walter Bernard and Wynton Bernard (Appellants) appeal from the order denying their petition to strike or open the confessed judgment for $100,882.37 entered against them and in favor of 9795 Perry Highway Management, LLC (Perry Highway).  After careful review, we affirm.

The trial court summarized the case history as follows:

[Appellants] entered into a commercial lease [(lease)] on July 7, 2017, with [Perry Highway] for space to operate an escape room. The six-year lease commenced on November 1, 2018. [Appellants] fell behind on the rent by making only a half-payment in April, 2020, and thereafter did not make further payments.  On June 5, 2020, [Appellants] sent a letter terminating the lease. [Perry Highway] responded that the lease was in default and demanded all sums due.  [Perry Highway] filed a Complaint in Confession of Judgment on July 22, 2020.  On August 4, 2020, [Appellants] filed a Petition to Open/Strike that is the subject of this appeal.  [Appellants] argued that they should be excused from

_____

[*] Retired Senior Judge assigned to the Superior Court.

paying rent based on the Commonwealth's COVID-19 closure order of March 2020.

Trial Court Opinion, 9/14/21, at 1-2.

Following the filing of an answer and new matter by Perry Highway, on November 6, 2020, the trial court issued a rule to show cause setting a schedule for discovery and briefing. While Perry Highway served discovery requests and took depositions from Appellants, Appellants did not seek discovery from Perry Highway. On July 7, 2021, the trial court issued an order denying Appellants' petition to open/strike.[1] This appeal followed.[2]

Appellants raise four issues for review:

I. Did the Trial Court err in failing to strike the confessed judgment for errors apparent on the face of the record, including but not limited to, defects on the face of the record, and a failure to comply with the advance notice provisions of Act 6 of 1974?

II. Did the Trial Court err by failing to find that the total prohibition of the use of real estate for the only purpose permitted by the lease was a frustration of the purpose of the lease, canceling the parties' obligations under the lease?

III. Did the Trial Court err by failing to recognize that a claim was raised for a total temporary taking of the Lease by the government (the classic definition of the exercise of eminent domain) which, at the very least, raised a jury question, requiring the opening of the confessed judgment?

_____

[1] The trial court states that a hearing on the petition to open/strike occurred on April 7, 2021. Trial Court Opinion, 7/7/21, at 1 (unnumbered). However, no hearing is listed on the docket, there is no transcript in the record, and neither party references a hearing in their briefs.

[2] Appellants and the trial court have complied with Pa.R.A.P. 1925.

IV. Did the Trial Court err by failing to open the judgment when the amount was obviously, and admittedly excessive, relegating the defense to the inefficient and uncertain process of execution, thus depriving [Appellants] of an opportunity to have the matter determined at a meaningful time and in a meaningful manner?

Appellants' Brief at 7 (reordered for disposition).

It is well-settled that a petition to strike off or open a confessed judgment "appeals to the equitable and discretionary powers of the trial court, and absent an abuse of discretion or manifest error, we will not disturb its decision." *Courtney v. Ryan Homes, Inc.*, 497 A.2d 938, 941 (Pa. Super. 1985) (citations omitted). We have explained:

> A confessed judgment will be stricken "only if a fatal defect or irregularity appears on the face of the record." A judgment by confession will be opened if the petitioner acts promptly, alleges a meritorious defense, and presents sufficient evidence in support of the defense to require the submission of the issues to a jury. In adjudicating the petition to strike and/or open the confessed judgment, the trial court is charged with determining whether the petitioner presented sufficient evidence of a meritorious defense to require submission of that issue to a jury. A meritorious defense is one upon which relief could be afforded if proven at trial.

*Ferrick v. Bianchini*, 69 A.3d 642, 647 (Pa. Super. 2013) (citations omitted).

> In other words, the petition to strike a confessed judgment must focus on any defects or irregularities appearing on the face of the record, as filed by the party in whose favor the warrant was given, which affect the validity of the judgment and entitle the petitioner to relief as a matter of law. "[T]he record must be sufficient to sustain the judgment." The original record that is subject to review in a motion to strike a confessed judgment consists of the complaint in confession of judgment and the attached exhibits.

In contrast, "if the truth of the factual averments contained in [the complaint in confession of judgment and attached exhibits] is disputed, then the remedy is by proceeding to open the judgment," not to strike it. A petition to strike a confessed judgment and a petition to open a confessed judgment are distinct remedies; they are not interchangeable.

***Midwest Fin. Acceptance Corp. v. Lopez***, 78 A.3d 614, 623 (Pa. Super. 2013) (citations omitted).

In their first issue, Appellants contend Perry Highway "fail[ed] to strictly comply with the law and rules governing judgments by confession," and there "are defects on the face of the record which require the confessed judgment to be stricken." Appellants' Brief at 28. However, rather than explain the defects, Appellants state: "The allegations of the Petition to Open or Strike are incorporated herein by reference. The defects apparent on the face of the record, such as a failure to ever file a Return of Service, as required by the rules, have gone uncorrected, even though admitted to by [Perry Highway]." ***Id.*** In their short discussion of this issue, Appellants reiterate, "The defects on the record have been extensively set forth in the Petition to Strike." ***Id.*** at 29.

The incorporation of pleadings by reference, as a substitute for argument, is unacceptable. ***See Franciscus v. Sevdik***, 135 A.3d 1092, 1096 n.6 (Pa. Super. 2016) (citation omitted); ***see also Deal v. Children's Hosp. of Phila.***, 223 A.3d 705, 714-15 (Pa. Super. 2019) (issue waived where appellant "merely refers to or incorporates by reference prior legal filings.").

Moreover, while Appellants assert Perry Highway's failure to file a return of service constitutes a fatal defect on the face of the pleadings,[3] they fail to cite legal authority to support their claim. As we stated in **Deal**, "Rule of Appellate Procedure 2119(a) requires that each distinct issue in the argument section of a brief contain such discussion and citation of authorities as are deemed pertinent." **Id.** (citations omitted). This Court will not act as counsel and will not develop arguments on behalf of an appellant. **Commonwealth v. Hardy**, 918 A.2d 766, 771 (Pa. Super. 2007); **Bombar v. West Amer. Ins. Co.**, 932 A.2d 78, 94 (Pa. Super. 2007). When deficiencies in a brief hinder our ability to conduct meaningful appellate review, we can dismiss the appeal entirely or find certain issues to be waived. Pa.R.A.P. 2101; **Hardy**, **supra**. As Appellants have failed to develop their argument, this first issue is waived.

In their second issue, Appellants maintain they were entitled to discharge of their lease under the doctrines of frustration of purpose and/or impracticability/impossibility of purpose. Appellants' Brief at 13-20. Appellants argue:

> The purpose of the Lease is clear. Tenants are to operate an escape room. The premises are not to be used for any other purpose. It is also clear from the unrebutted testimony of each of the Appellants that the premises cannot be used for this purpose by reason of the pandemic and the Orders of the Governor. The

---

[3] Perry Highway argues it was not required to file a return of service because Appellants' counsel agreed to accept service on Appellants' behalf. Perry Highway's Brief at 23.

purpose from [Appellants'] perspective is to have a space amenable to an escape room which they could (and did) adapt to such purpose. From [Perry Highway's] perspective, the obligation is to deliver a space suitable for that purpose. Otherwise, of course, there would be no Lease.

That purpose was met and was being fulfilled from January 2018 into March of 2020. Circumstances, completely beyond the control or vision of either party, changed. Covid-19 was released into the world. As a result, "social distancing" orders were issued which shut down much of society, and the escape room in particular. The business could not be run at all. There was absolutely no portion of the escape room which could be operated safely, or without risking a violation of the Lease by operating in direct violation of the shut-down orders.

This is the classic definition of "Frustration of Purpose."

Appellants' Brief at 13-14. Appellants also contend the events fell under the doctrine of impracticability/impossibility of performance. *Id.* at 14-20.

Perry Highway counters that the lease does not contain a *force majeure* clause[4] which would have allocated the risk of loss, and that nothing prevented Appellants from negotiating one. Perry Highway's Brief at 11-12. Perry Highway maintains the doctrines of frustration of purpose and impracticability/impossibility of purpose do not apply. *Id.* at 12-16.

Under the doctrine of frustration of purpose,

"[w]hen people enter into a contract which is dependent for the possibility of its performance on the continual availability of a specific thing, and that availability comes to an end by reason of circumstances beyond the control of the parties, the contract is

_____

[4] A *force majeure* clause is a "contractual provision allocating the risk of loss if performance becomes impossible or impracticable, esp. as a result of an event or effect that the parties could not have anticipated or controlled." Black's Law Dictionary, 340 (5th Pocket ed. 1996).

*prima facie* regarded as dissolved." **Hart v. Arnold**, 884 A.2d 316, 335 (Pa. Super. 2005) (citation omitted). The Restatement (Second) of Contracts section 261 provides:

**Discharge By Supervening Impracticability**

Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.

RESTATEMENT (SECOND) OF CONTRACTS § 261 (1981).

**Ragnar Benson, Inc. v. Hempfield Twp. Mun. Auth.**, 916 A.2d 1183, 1190

(Pa. Super. 2007).

To establish frustration of purpose,

[f]irst, the purpose that is frustrated must have been a principal purpose of that party in making the contract. It is not enough that he or she had in mind some specific object without which he would not have made the contract. The object must be so completely the basis of the contract that, as both parties understand, without it the transaction would make little sense. Second, the frustration must be substantial. **It is not enough that the transaction has become less profitable for the affected party or even that he will sustain a loss. The frustration must be so severe that it is not fairly to be regarded as within the risks that he assumed under the contract.** Third, the non-occurrence of the frustrating event must have been a basic assumption on which the contract was made. This involves essentially the same sorts of determinations that are involved under the general rule on impracticability.

**Step Plan Services, Inc. v. Koresko**, 12 A.3d 401, 413 (Pa. Super. 2010)

(citation omitted) (emphasis in original, some emphases omitted). However,

a party's wholly subjective expectations are insufficient to avoid enforcement

of an otherwise clear agreement based on the frustration of purpose doctrine. *Id.* Lastly, the doctrine of frustration of purpose is to be applied sparingly. ***Darn v. Stanhope Steel, Inc.***, 534 A.2d 798, 812 (Pa. Super. 1987).

As to the doctrine of impracticability/impossibility, we have referenced the Restatement (Second) of Contracts in explaining that the doctrines of impossibility or impracticability "will not apply if a performance remains practicable and is merely beyond a particular party's capacity to render it ... the financial inability of one of the parties to complete obligations under the contract will not effect a discharge." ***Luber v. Luber***, 614 A.2d 771, 774 (Pa. Super. 1992); ***see also Felix v. Giuseppe Kitchens & Baths, Inc.***, 848 A.2d 943, 947 (Pa. Super. 2004) ("It is well-settled that a party assumes the risk of his or her own inability to perform contractual duties. A claim of personal inability to perform the actions contemplated ... does not rise to the level of legal impossibility.").

Further, the United States Supreme Court has held:

> For a successful impossibility defense [the defendant] would have to show that the nonoccurrence of [an event] was a basic assumption of these contracts. **The premise of this requirement is that the parties will have bargained with respect to any risks that are both within their contemplation and central to the substance of the contract**; as Justice Traynor said, "[i]f [the risk] was foreseeable there should have been provision for it in the contract, and the absence of such a provision gives rise to the inference that the risk was assumed."

***U.S. v. Winstar Corp.***, 518 U.S. 839, 905 (1996) (citations and footnote omitted, emphasis added).

In this case, the trial court opined,

in their argument that it was impossible to perform the duties under the contract, [Appellants] seem to have a misplaced view of what is "performance" under the lease. The defendants do not "perform" under the contract by operating an escape room; rather they "perform" by paying the rent. The occasion of lost operating revenue that deprives them of the means to make payment under the lease needed to be addressed in the leases' terms.

Trial Court Opinion, 7/7/20, at 3 (unnumbered). The court further observed that Appellants "are the party who repudiated the lease by sending correspondence to that effect on June 5, 2020." Trial Court Opinion, 9/14/21, at 3. The court also underscored that June 5, 2020 was the day businesses reopened at 50% capacity in the western region of Pennsylvania. *Id.* The court concluded, "Under such facts, [Appellants] cannot argue the doctrines of impossibility of performance or frustration of purpose, because they were not precluded from operating their business, albeit at a reduced capacity." *Id.* Upon review, we agree.

Appellants have provided no persuasive authority for their claim. While Pennsylvania recognizes the doctrines of frustration of purpose and/or impossibility/impracticability, and even recognizing that the COVID-19 pandemic was unprecedented, Appellants have presented no legal authority to persuade us that application of the doctrines is proper. *See* Appellants' Brief at 13-20. As Perry Highway discusses, there appears to be no Pennsylvania law on point, although courts in New York have issued decisions finding that the doctrines of frustration of purpose and/or

- 9 -

impracticability/impossibility are inapplicable to COVID-19 closures.[5] **See** Perry Highway's Brief at 13-16.

In **Hugo Boss Retail, Inc.**, the New York trial court granted summary judgment to the landlord, following the tenant's non-payment of rent due to COVID closures. **Hugo Boss Retail, Inc. v. A/R Retail, LLC**, 71 Misc.3d 1222(A), at *2 (N.Y. Co. Sup. Ct. May 19, 2021). The court rejected the doctrine of frustration of purpose, noting the long-term nature of the commercial lease, the shortness of the closure period, and the foreseeability of a temporary business closure during the life of the lease. **Id.** at ** 9-10. In so holding, the court emphasized that when the New York courts have found either frustration of purpose or impracticability/impossibility of purpose, they have done so in narrow circumstances:

> Examples of a lease's purposes being declared frustrated have included situations where the tenant was unable to use the premises as a restaurant until a public sewer was completed, which took nearly three years after the lease was executed, and where a tenant who entered into a lease of premises for office space could not occupy the premises because the certificate of occupancy allowed only residential use and the landlord refused to correct it[.]

---

[5] "The decisions of courts of other states are persuasive, but not binding, authority." **Huber v. Etkin**, 58 A.3d 772, 780 n.8 (Pa. Super. 2012) (citation omitted).

*Id.* at *8 (citations omitted).  *See also Gap v. Ponte Garde New York LLC*, 524 F.Supp.3d 224, 232-39 (S.D.N.Y. 2021) (granting landlord's motion for summary judgment in breach of lease case and rejecting claims that COVID closures constituted frustration and/or impracticability/impossibility of purpose).[6]  In other cases, New York courts have noted where a lease was for building space and the space still exists, the frustration doctrine is inapplicable.  *35 East 75th Street Corp. v. Christian Louboutin L.L.C.,* 2020 WL 7315470, at *2 (N.Y. Co. Sup. Ct. Dec. 9, 2020); *see also Greater New York Auto. Dealers Ass'n, Inc. v. City Spec, LLC*, 70 Misc.3d 1209(A), at *9 (N.Y. Civ. Ct. 2020) ("[E]ven if Respondent were forced by the Executive Order to close in-person operations at the Premises, a four-month closure out of a five-year lease did not frustrate the overall purpose of the Lease.").

The New York holdings are consistent with Pennsylvania case law.  In *Albert M. Greenfield & Co., Inc.*, the tenant entered into two leases with the landlord, one for land with a building, and the other for the surrounding, undeveloped land, so the tenant could operate a used car sales, repair and storage business.  *Albert M. Greenfield & Co., Inc. v. Kolea*, 380 A.2d 758,

---

[6] "Decisions of the federal district courts ... are not binding on Pennsylvania courts, even when a federal question is involved.  Nevertheless, these decisions are persuasive authority and helpful in our review of the issue presented." *Dietz v. Chase Home Finance, LLC*, 41 A.3d 882, 886 n.3 (Pa. Super. 2012).

758-59 (Pa. 1977). In the second year of the lease, the building was destroyed in an accidental fire, and the landlord placed barricades around the surrounding land. *Id.* The Pennsylvania Supreme Court held the tenant was relieved from his obligation under the leases pursuant to the doctrines of impossibility and frustration of purpose. The Court explained:

> In the instant case, it is apparent that when the building was destroyed by fire it became impossible for the appellee to furnish the agreed consideration ". . . all that one story garage building. . . ." Nothing in the first lease implies that any interest in the land itself was intended to be conveyed. It is also obvious that the purpose of the lease with respect to the appellant was thereby frustrated. As noted in the lease, the parties contemplated that appellant would use the building for the repair and sale of used motor vehicles. Without a building appellant could no longer carry on a used car business as contemplated by the parties at the time they entered into the lease agreement. It became extremely impracticable for the appellant to continue using the adjoining lot when his business office and repair stations were destroyed by the fire. Additionally, because of the dangerous condition created by the fire, the city required appellee to barricade the property covered by both leases, thus preventing appellant from entering the property.

*Id.* at 759-60.

Here, the situation is analogous to those discussed in the New York cases, and distinguishable from ***Albert M. Greenfield***. Appellants were more than two years into the six-year lease when the COVID-19 pandemic caused the relatively short-term, approximately 78-day closure. Had Appellants not vacated the premises, they could have reopened, albeit at a reduced capacity, on June 5, 2020. This is not the "substantial" frustration, discussed in ***Step***, ***supra***, that allows for the application of the doctrine of frustration of purpose.

Rather, Appellants experienced a situation where it was "less profitable" for Appellants to operate their business, which is an insufficient basis for invoking the doctrine. *Step*, 12 A.3d at 413.

Moreover, while the COVID-19 pandemic may not have been unexpected, temporary closure of a building due to forces outside the control of either party is foreseeable. Thus, we see no abuse of discretion or manifest error in the trial court's finding that the doctrines did not constitute meritorious defenses allowing for the opening of the confessed judgment. Appellants' second issue does not merit relief.

In their third issue, Appellants complain that the trial court erred in finding the closure order did not amount to "a *de facto* taking of [ ] private property which, under the terms of the subject lease drafted by [Perry Highway] absolves the tenant, and any guarantor, of any further obligation under the lease." Appellants' Brief at 21; Lease, 7/7/17, at 16 ¶ 24.

Perry Highway does not dispute the existence of an eminent domain clause in the lease, but contends Appellants' claim is "baseless." It relies on the Pennsylvania Supreme Court's decision in *Friends of Danny DeVito v. Wolf*, 227 A.3d 872 (Pa. 2020).

In *Friends of Danny DeVito*, four businesses challenged a closure order. *Id.* at 876. They specifically argued the closure order,

> resulted in a taking of private property for public use without the payment of just compensation, in violation of the Fifth Amendment to the United States Constitution and Article I, Section 10 of the Pennsylvania Constitution. According to

Petitioners, a taking need not involve a physical taking of the property to implicate the constitutional protections requiring just compensation. Instead, referring to the Executive Order as a government regulation, Petitioners argue that it is sufficient if a governmental regulation deprive[s] an owner of all economically beneficial or productive use of land....

*Id.* at 893 (footnotes, internal quotation marks, and citations omitted). The Pennsylvania Supreme Court disagreed, stating:

Petitioners have not established that a regulatory taking has occurred. The Executive Order results in only a temporary loss of the use of the Petitioners' business premises, and the Governor's reason for imposing said restrictions on the use of their property, namely to protect the lives and health of millions of Pennsylvania citizens, undoubtedly constitutes a classic example of the use of the police power to protect the lives, health, morals, comfort, and general welfare of the people[.] We note that the Emergency Code temporarily limits the Executive Order to ninety days unless renewed and provides the General Assembly with the ability to terminate the order at any time. Moreover, the public health rationale for imposing the restrictions in the Executive Order, to suppress the spread of the virus throughout the Commonwealth, is a stop-gap measure and, by definition, temporary. While the duration of COVID-19 as a natural disaster is currently unknown, the development of a vaccine to prevent future outbreaks, the development of an immunity in individuals previously infected and the availability of widespread testing and contact tracing are all viewed as the basis for ending the COVID-19 disaster.

*Id.* at 895-96 (citations and footnote omitted).

Applying the above holding, Appellants' claim that the closure order constituted a *de facto* taking lacks merit. ***Id.***; ***see also 1600 Walnut Corp. v. Cole Haan Co. Store***, 530 F.Supp.3d 555, 559 (E.D.Pa. 2021) (relying on ***Friends of Danny DeVito*** to dismiss claim that closure order constituted taking because "the Governor's executive orders [were] a valid uses of police power and not a taking under the exercise of eminent domain power").

- 14 -

Finally, in their fourth issue, Appellants assert that the trial court erred by allowing Perry Highway to make a "double recovery" on rent because Perry Highway leased the property to a new tenant.[7]  Appellants' Brief at 24.  Perry Highway concedes that Appellants are entitled to a credit at the time of execution of the judgment.  Perry Highway's Brief at 21.  Both parties rely on this Court's decision in **Ferrick**, **supra**.

In **Ferrick**, as in this case, the tenant defaulted on the rent and abandoned the property, and the landlord found a new tenant.  **Ferrick**, 69 A.3d at 645-46.  The landlord successfully filed a complaint for confession of judgment for past-due rent, charges, accelerated rent and fees for the remainder of the lease, which exceeded $1.5 million dollars.  **Id.**  The tenant filed a motion to strike or open the judgment, which the trial court denied. **Id.**

On appeal, we **affirmed** the decision of the trial court.  **Id.** at 658.  We stated, "**where a commercial tenant vacates the leasehold, the landlord may seek accelerated rent if the lease so provides, and re-let the**

_____

[7] Appellants also claim "other portions of the judgment" may be "excessive as no accounting, required by the Lease, was ever provided for the amounts claimed by Perry Highway[.]"  Appellants' Brief at 25.  Appellants do not specify what these "other portions" are or why they are excessive.  Again, it is not this Court's responsibility to comb through the record seeking the factual underpinnings of Appellants' claim.  **Commonwealth v. Mulholland**, 702 A.2d 1027, 1034 n.5 (Pa. Super. 1997) ("In a record containing thousands of pages, this court will not search every page to substantiate a party's incomplete argument").  Accordingly, Appellants waived their claim that other portions of the judgment are incorrect or excessive.

**premises.** The landlord, however, must credit the tenant **at execution** for sums paid by the replacement tenant." ***Id.*** at 656 (emphases added). We concluded the tenant's claim of a double recovery, "does not provide Tenant with a meritorious defense to the validity of the confessed judgment for accelerated rent, but does support a credit against the judgment **at execution** if Landlord receives rents from a new tenant." ***Id.*** at 657 (emphasis added).

Accordingly, ***Ferrick*** does not support Appellants' contention they are entitled to open the judgment because Perry Highway sought accelerated rent even though it had re-let the premises. The correct remedy is for Appellants to receive a credit at execution. Appellants' final issue does not merit relief.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/29/2022